## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **AQUIFER GUARDIANS IN URBAN AREAS,** *et al.* | ) ) ) | |
| **Plaintiffs,** | ) ) | **CONSOLIDATED ACTION** |
| **VS.** | ) ) | **Civil Action No. SA-06-CA-1121-XR** **Civil Action No. SA-07-CA-0582-XR** |
| **UNITED STATES FISH AND WILDLIFE SERVICE,** *et al.* | ) ) ) | |
| **Defendants.** | ) | |

## ORDER

This case arises from the issuance of a June 23, 2006 Biological Opinion (BiOp) by the United States Fish and Wildlife Service (FWS) for the San Antonio City Public Service Electric (CPSE) Cagnon-Kendall transmission line. Plaintiffs allege that the FWS violated § 7(a)(2) of the Endangered Species Act (ESA) and § 706(2)(A) of the Administrative Procedures Act (APA) by concluding that the transmission line project was not likely to jeopardize the continued existence of the Golden-cheeked warbler, an endangered bird indigenous to Texas. Plaintiffs further allege that the United States Army Corps of Engineers (Corps) violated the ESA and APA when it issued a biological assessment of the transmission line on July 19, 2006 that purportedly failed to ensure against jeopardy to the Golden-cheeked warbler.

Plaintiffs request that the Court 1) declare invalid FWS's no-jeopardy BiOp, 2) declare invalid the transmission line's use of Nationwide Permit 12 (NWP 12), issued pursuant to § 404 of the Clean Water Act (CWA), 3) remand the transmission line BiOp so that the FWS may prepare

a complete and adequate BiOp using the best scientific data and fully evaluating all effects of the transmission line on the Golden-cheeked warbler, 4) order the FWS to stay final action on pending and future BiOp's and Incidental Take Permits in Region 6 until if performs a meaningful analysis of Golden-cheeked warbler population viability and habitat needs, 5) remand the CWA discharge permit authorization for the transmission line so that the Corps may complete an environmental/biological assessment and adequate ESA and CWA analyses of the transmission line and its proposed mitigation measures, and 6) award Plaintiffs their reasonable costs and attorney fees.

Plaintiffs and Defendants have filed cross motions for summary judgment (Docket Nos. 53 and 57). Having reviewed these motions, along with the accompanying Amicus briefing, the Court DENIES Plaintiffs' motion and GRANTS Defendants' motion.

## Factual Background

CPSE, the municipally-owned electric and gas utility in San Antonio, Texas, constructed a 30-mile long transmission line from the existing Cagnon substation in western Bexar County to the Bexar-Kendall county line, where the transmission line ties in with a transmission line constructed by the Lower Colorado River Authority. The right-of-way for the line is generally 150 feet wide. Construction of maintenance access roads for the northern portion of the transmission line required the placement of eight permanent culverted stream crossings. CPSE constructed these culverts under the authority of the Corps' Nationwide Permit 12 (NWP 12), which authorizes certain utility line impacts to waters of the United States under the CWA § 404 program.

Because some of the culverted crossings were also located in, or in the immediate vicinity

of, habitat for the endangered Golden-cheeked warbler, CPSE was required to provide to the Corps a pre-construction notification, and the Corps entered into formal consultation with the FWS under § 7 of the ESA. By its letter dated January 12, 2006, the Corps initiated the consultation with FWS. The Federal action triggering consultation in this case was the filling of 0.068 acres of waters of the United States. The total amount of clearing for the proposed project was 10.59 acres of potential Golden-cheeked warbler habitat. With respect to the Golden-cheeked warbler, CPSE agreed that it would not clear vegetation in the bird's potential habitat during the breeding season (Mar. 1 to Aug. 1).

FWS issued its BiOp on June 23, 2006. In it, FWS found that the proposed action, including CPSE's anticipated clearing of approximately 10.59 acres of suitable habitat, would not jeopardize the continued existence of the Golden-cheeked warbler. FWS determined that the action area consisted of the proposed transmission line, rights-of-way (e.g., access roads), and up to 300 ft on either side of the line to account for indirect effects from fragmentation and noise caused by the construction of the line. FWS determined that construction of the transmission line outside the nesting and post-fledgling periods for Golden-cheeked warblers would minimize and avoid most adverse effects to the species.

By letter dated July 27, 2006, the Corps confirmed CPSE's authorization to use NWP 12 in connection with the project, subject to compliance with the terms of the BiOp. Construction of the transmission line, access roads, and crossings, as well as all clean up was complete prior to March 2007, and the Corps conducted an assessment in August 2007, where it determined that the construction appeared to comply with the NWP 12 and the BiOp.

**Legal Analysis**

Summary Judgment Standard

      The Federal Rules provide that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[1] The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[2] Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present evidence setting forth "specific facts showing a genuine issue for trial."[3]

Mootness Doctrine

      Although Plaintiffs filed suit in December 2006 before the line was complete, they did not file a motion for a temporary restraining order or preliminary injunction. The transmission line is now complete, and Plaintiffs do not seek its dismantlement. Thus, Defendants and Amicus argue the relief Plaintiffs seek can neither be granted nor would it provide the relief they purportedly request. Specifically, Defendants contend that "the Court has the ability only to remand the Biological Opinion, which, because the Court no longer has jurisdiction over the

---

[1] FED. R. CIV. P. 56(c).

[2] Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[3] FED. R. CIV. P. 56(e)(2).

-4-

CPSE action, does not provide effective relief."[4]

As the Fifth Circuit stated in a similar case, a court "must address the issue of mootness first, because to qualify as a case for federal court adjudication, a case or controversy must exist at all stages of the litigation, not just at the time the suit was filed."[5] Defendants contend that all of the Corps' activities authorized under NWP 12 are now complete. As a result, they assert "the Corps no longer has jurisdiction over the CPSE's activities, and no federal action remains for FWS to review in a new biological opinion."[6] Accordingly, "a remand of the Biological Opinion to FWS would not provide any effective relief."[7]

Defendants rely strongly on the Fifth Circuit's holding in *Bayou Liberty*.[8] Facing a similar case to this one, the Fifth Circuit found that plaintiffs' claims were moot. According to the Court, the plaintiffs:

> requested injunctive relief requests staying or suspending the permit and requiring the Corps to consider the direct, indirect, and cumulative impacts. [The plaintiffs] also sought declaratory relief stating that the Corps was required to consider these impacts before granting the permit. However, even if this court were to find in [plaintiffs'] favor and suspend or stay the permit, this action would not have any effect because the construction authorized by the permit has been substantially completed.[9]

---

[4] Docket No. 57 at 19.

[5] Bayou Liberty Association, Inc. v. U.S. Army Corps of Engineers, 217 F.3d 393, 396 (5th Cir. 2000).

[6] Docket No. 57 at 14.

[7] *Id*. at 14-5.

[8] Bayou Liberty Association, Inc. v. U.S. Army Corps of Engineers, 217 F.3d 393 (5th Cir. 2000).

[9] *Id*. at 396.

Plaintiffs, in response, attempt to distinguish *Bayou Liberty* from the present case. They assert the Corps still has jurisdiction over the transmission line project because the Corps always has general jurisdiction over the waters and jurisdictional wetlands of the United States.[10] As for *Bayou Liberty*, Plaintiffs state it is distinguishable because the plaintiffs in that case did not request in their original complaint that the Court consider the ongoing risk of flooding. Instead, this claim was added on appeal, and the Fifth Circuit refused to consider it for that reason. According to Plaintiffs, this "claim was important because it was a form of relief that would have addressed an ongoing harm to the plaintiffs and therefore would have defeated the mootness arguments."[11] In the current controversy, Plaintiffs have raised a concern over the ongoing threat posed to the Golden-cheeked warbler by the transmission line project. They argue that unlike *Bayou Liberty*, they have raised a claim whose effects are ongoing and thus not mooted by the completion of the challenged project.

As to Plaintiffs' contention that the Corps retains general jurisdiction over the waters and wetlands of the United States, the Court agrees with Defendants that the Corps "does not have jurisdiction over private parties whose permitted projects have been completed."[12] After the construction of the transmission line was complete, Corps' personnel conducted a site visit to ensure the finished line complied with the NWP 12 it had issued and with the FWS' BiOp. Based

---

[10] *See* Docket No. 61 at 2. Plaintiffs rely on 33 U.S.C. § 1344 for this argument.

[11] *Id*. at 3.

[12] Docket No. 63 at 5. *See* Defenders of Wildlife v. Flowers, 2003 WL 22143263 at 2 (D. Ariz. 2003) in which the Court considered a similar set of facts to the ones in this case and found that because the permitted work was finished, it was "undisputed that the Corps no longer had jurisdiction over [the] project."

on that visit, the Corps concluded that " the crossings meet the scope of NWP [12] authorization

and it appeared the project met the "Reasonable and Prudent Measures" and "Terms and

Conditions" of the June 23, 2006 biological opinion."[13] Having made such a determination, the

Corps' involvement in the challenged project came to an end.

      As for their attempt to distinguish this case from *Bayou Liberty*, Plaintiffs conjecture that

the Fifth Circuit would not have held that the mootness doctrine applied if plaintiffs had pled

differently. Plaintiffs speculate that the failure to plead a claim of ongoing injury, namely the

threat of continued flooding, was crucial to the court's holding.

      The Court finds Plaintiffs' attempt to escape the reach of *Bayou Liberty*'s holding to be

strained.[14] Even if Plaintiffs were to succeed in chipping away at the edge of the court's ruling,

the central holding remains clear. The court held that even if it were to find that the Corps was

required to go back and consider the types of impacts complained of by plaintiffs, "this action

would not have any effect because the construction authorized by the permit has been

substantially completed."[15] Likewise, even if this Court were to remand the BiOp to the FWS, the

action's effect would be nullified because the construction is already complete.[16]

_____

[13] Docket No. 62 at 4.

[14] While not directly responsive to Plaintiffs' argument, the Court notes that the facts in *Bayou Liberty* are arguably more favorable to the plaintiffs in that case than to the Plaintiffs in this case. Unlike what transpired in the *Bayou Liberty* litigation, Plaintiffs here never sought preliminary injunctive relief and the challenged project is not merely "substantially completed" but is fully completed.

[15] *Bayou Liberty*, 217 F.3d at 396.

[16] All that Plaintiffs could hope for is a revised BiOp that **recommends**, **but does not compel**, additional conservation measures. While the regulations do permit the FWS to make "a statement containing discretionary conservation recommendations" in the BiOp, they make clear that

What it appears Plaintiffs really want, however, is for the Court to take action that will affect the future development of lands, even though such hypothetical development projects are not before this Court. As Plaintiffs acknowledge, they hope that a "ruling by this Court would bring about a change in the local policy and approach of both FWS and the Corps, such that their inevitable future consideration of actions that effect Golden-cheeked warbler habitat will not suffer from the same defects identified in this case."[17] Because such speculative future actions do not constitute final agency actions, the Court has no jurisdiction to grant Plaintiffs the relief they request.[18]

Finally, Plaintiffs contend that the claims in this case are "capable of repetition, yet evading review."[19] As the Fifth Circuit has noted, "the capable-of-repetition doctrine applies only in exceptional situations where the following two circumstances are simultaneously present: 1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and 2) there is a reasonable expectation that the same complaining party will be subject to the same action again."[20]

Even assuming Plaintiffs can meet the second prong, which is questionable, they cannot meet the first. In *Bayou Liberty*, the Fifth Circuit found that "although there may be a limited

---

"conservation recommendations are **advisory** and are **not intended to carry any binding legal force**." (50 C.F.R. § 402.14(j)).

[17] Docket No. 61 at 4.

[18] *See* Lujan v. National Wildlife Federation, 497 U.S. 871, 894 (1990).

[19] *See* Weinstein v. Bradford, 423 U.S. 147, 148 (1975).

[20] *Bayou Liberty*, 217 F.3d at 398.

span of time between issuance of the permit and completion of the construction, there are methods available to halt the construction and receive full review of the Corps' procedures before the construction is substantially completed or the wetlands are destroyed."[21] Indeed, the court observed that in a future action, the plaintiffs would "have an opportunity to challenge that new permit and seek injunctive relief" just as they had done in the case under consideration.[22]

Plaintiffs here had the option of seeking injunctive relief, but chose not to do so. Had they sought such relief, this Court could have considered the merits of their substantive claims prior to the substantial completion of the project. In the future, should these Plaintiffs or any others wish to challenge a project that might affect the Golden-cheeked warbler, they have the ability to bring suit and obtain appropriate relief from the court prior to the substantial completion of the project. Accordingly, prong one of the capable of repetition doctrine is not met.

## Conclusion

For the reasons set forth above, the Court finds that Plaintiffs' claims are moot. As a result, Defendants' motion for summary judgment (Docket No. 57) is GRANTED, and Plaintiffs' motion for summary judgment (Docket No. 53) is DENIED.

The Clerk is instructed to enter Final Judgment for Defendants, with costs to be born by Plaintiffs. Defendants have fourteen (14) days from entry of Judgment to submit their bill of costs.

It is so ORDERED.

---

[21] *Id.*

[22] *Id.* at 399.

SIGNED this 8th day of April, 2008.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE